# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ M. ROBLES DE NUNEZ, | Case No. 1:21-cv-00618-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 13, 17) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Luz M. Robles De Nunez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings arguing: (1) the Administrative Law Judge's residual functional capacity finding contains logical errors; and (2) the Administrative Law Judge failed to include work-related limitations in the residual functional

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 9, 12, 13.)

capacity finding consistent with the nature and intensity of Plaintiff's limitations, including by failing to offer legitimate reasons for rejecting Plaintiff's subjective complaints.  For the reasons explained herein, Plaintiff's social security appeal shall be denied.

## II.

## BACKGROUND

### A.    Procedural History

On December 13, 2018, Plaintiff filed a Title II application for a period of disability insurance benefits, and a Title XVI application for supplemental income benefits, alleging a period of disability beginning on June 26, 2018.  (AR 198-201, 202-213.)  Plaintiff's application was initially denied on March 8, 2019, and denied upon reconsideration on June 3, 2019.  (AR 116, 123.)  Plaintiff requested and received a hearing before Administrative Law Judge Shane McGovern (the "ALJ").  Plaintiff appeared for a hearing before the ALJ on August 7, 2020.  (AR 38-63.)  On September 2 2020, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 15-37.)  The Appeals Council denied Plaintiff's request for review on February 17, 2021. (AR 1-8.)

On April 14, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)   On August 1, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 15.) On November 8, 2022, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 19.) On January 19, 2023, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 24.)  Plaintiff did not file a reply brief.

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, October 30, 2020:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since July 26, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: left knee residuals from torn

1    meniscus, status-post surgery/meniscectomy; residuals from right knee replacement;

2    obesity (20 CFR 404.1520(c) and 416.920(c)).

3    4. The claimant does not have an impairment or combination of impairments that meets

4    or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

5    Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d),

6    416.925 and 416.926).

7    5. The claimant has the residual functional capacity to perform light work as defined in

8    20 CFR 404.1567(b) and 416.967(b) except she can never climb

9    ladders/ropes/scaffolds, only occasionally balance, stoop, kneel, crouch and crawl.

10    She must avoid exposure to hazards such as moving mechanical parts and unprotected

11    heights, and avoid exposure to excessive vibration.

12    6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and

13    416.965).

14    7. The claimant was born on February 5, 1967 and was 51 years old, which is defined as

15    an individual closely approaching advanced age, on the alleged disability onset date

16    (20 CFR 404.1563 and 416.963).

17    8. The claimant has a marginal education (20 CFR 404.1564 and 416.964).

18    9. Transferability of job skills is not an issue in this case because the claimant's past

19    relevant work is unskilled (20 CFR 404.1568 and 416.968).

20    10. Considering the claimant's age, education, work experience, and residual functional

21    capacity, there are jobs that exist in significant numbers in the national economy that

22    the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

23    11. The claimant has not been under a disability, as defined in the Social Security Act,

24    from July 26, 2018, through the date of this decision (20 CFR 404.1520(g) and

25    416.920(g)).

26    (AR 23-33.)

27    / / /

28    / / /

3

1

## III.

2

## LEGAL STANDARD

3

### A.    The Disability Standard

4

To qualify for disability insurance benefits under the Social Security Act, a claimant must

5 show she is unable "to engage in any substantial gainful activity by reason of any medically

6 determinable physical or mental impairment[2] which can be expected to result in death or which

7 has lasted or can be expected to last for a continuous period of not less than 12 months."  42

8 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation

9 process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] <u>Batson v.</u>

10 <u>Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1194 (9th Cir. 2004).   The five steps in the

11 sequential evaluation in assessing whether the claimant is disabled are:

12
13
> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

14
15
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

16
17
18
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

19
20
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

21
22
23
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

24

25
[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

26
27
28
[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1    **B.     Standard of Review**

2    Congress has provided that an individual may obtain judicial review of any final decision

3    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

4    In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised

5    by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.

6    2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court

7    must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42

8    U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is

9    relevant evidence which, considering the record as a whole, a reasonable person might accept as

10   adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir.

11   2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995));

12   see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence

13   standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary

14   sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means

15   more than a scintilla, but less than a preponderance; it is an extremely deferential standard."

16   Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal

17   quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

18   Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is

19   harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not

20   harmless "normally falls upon the party attacking the agency's determination."  Shinseki v.

21   Sanders, 556 U.S. 396, 409 (2009).

22   Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23   simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25   Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

26   review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is

28   not this Court's function to second guess the ALJ's conclusions and substitute the Court's

judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff argues: (1) the ALJ's residual functional capacity finding contains logical errors; and (2) the ALJ failed to include work-related limitations in the residual functional capacity finding consistent with the nature and intensity of Plaintiff's limitations, including by failing to offer legitimate reasons for rejecting Plaintiff's subjective complaints.

**A.     The RFC Determination is Proper and Supported by Substantial Evidence**

1.     General Legal Standards

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195; see also Lingenfelter, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for

resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work). Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).

## 2.   Plaintiff's Arguments on Appeal

As summarized above, the ALJ found greater limitations than the State agency physicians. (AR 30.) Plaintiff takes issue with the fact the ALJ disagreed with that assessment, and also disagreed with Plaintiff's own assessment that she was unable to perform light work due to the inability to stand and walk for prolonged periods and the need for a cane for ambulation. Plaintiff contends that once an ALJ determines that none of the available opinion evidence captures the totality of a claimant's functional limitations, the ALJ faces an evidentiary deficit that they may not fill with a lay opinion, Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006). (Br. 8.) Plaintiff argues that because no reviewing or examining doctor issued an opinion congruent with the assessed RFC, it is evident that the ALJ relied on his own lay interpretation of the evidence, that the ALJ states without specific citation, that the "longitudinal record supports greater limitations in lifting/carrying" (AR 40), and while the Plaintiff does not disagree that she

1    is more limited than assessed by the reviewing doctors, the fact remains that the ALJ's additional

2    limitations are fabricated from whole cloth.  (Br. 9.)

3        Plaintiff thus submits, in other words, that the ALJ did not logically connect the

4    additional medical evidence and impairments to the RFC limitations.  Plaintiff proffers for

5    example: there is no evidence that a light RFC would prevent or alleviate Plaintiff's increasing

6    pain upon prolonged standing and walking; that it is illogical to conclude that two bad knees

7    results in additional lifting limitations, but not additional standing and walking limitations; and

8    that Plaintiff stated that at all times since the September, 2018 surgery, she required a cane (AR

9    51).  Plaintiff argues medical evidence demonstrated ongoing weakness of the right lower

10   extremity through the date that the left knee became involved (AR 298, 307, 312, 403, 407); that

11   on June 6, 2019, Plaintiff reported to the right knee surgeon that she had left knee pain; that at

12   that time, the surgeon opined that as to the left knee, Plaintiff should undergo therapy and could

13   bear weight only as tolerated (AR 434); and this was also the case relative to the right knee (id.).

14       Plaintiff contends it is apparent that no State Agency doctor reviewed any evidence

15   pertaining to the left knee.  (AR 68, 93).  Further, once the proper imaging of the left knee was

16   finally obtained, the MRI revealed the large mass, driving the decision to operate on the left

17   knee.  (AR 459, 576).  Plaintiff concedes the ALJ acknowledged this evidence, but argues he

18   fails to explain how that evidence is indicative of the ability to stand and walk six hours out of an

19   eight hour work day, and nor does he explain how that evidence contraindicates the need for a

20   cane.  Plaintiff submits that indeed, despite overwhelming evidence of bilateral lower extremity

21   weakness, tenderness and swelling, nowhere in the determination does the ALJ connect the

22   ultimate RFC to these limitations.

23       Plaintiff also argues the ALJ's finding runs counter to SSR 96-8p, which provides that:

24   "The RFC assessment must include a narrative discussion describing how the evidence supports

25   each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

26   evidence (e.g., daily activities, observations)."  Titles II & Xvi: Assessing Residual Functional

27   Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).  Plaintiff states: "[n]owhere in her

28   determination does the ALJ indicate how an individual with these established symptoms

1    connects to the limitations assessed in her RFC," and "[t]his court requires that at a minimum,

2    the decision must explain the ALJ's reasoning with sufficient clarity to 'allow[] for meaningful

3    review.' "  (Br. 9-10, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015).  In

4    this regard, Plaintiff argues that without citations, the ALJ notes that additional limitations in

5    lifting and carrying are supported, but fails to explain or cite any evidence regarding that finding,

6    or why he failed to assess any limitations in standing and walking, or how the use of a cane was

7    contraindicated.

8         Plaintiff maintains that had the ALJ properly considered the limiting effects of both knee

9    impairments, it would be understood she could not sustain the RFC assessed by the ALJ.

10   Specifically, Plaintiff argues the ALJ failed to account for the need to use a cane, sit every 15-30

11   minutes and elevate the legs to relieve swelling (AR 51, 50, 249, 52, 314, 403, 525), and that had

12   the ALJ's assessed RFC properly accounted for these well-supported limits, he would have

13   found that Plaintiff was unable to perform light work due to the inability to stand and walk for

14   prolonged periods or ambulate without a cane.

15        3.    The Court Finds No Remandable Error

16        For the reasons explained below, the Court finds substantial evidence supports the ALJ's

17   RFC determination that the Plaintiff retains the RFC to perform light work as defined in 20 CFR

18   404.1567(b) and 416.967(b) except she can never climb ladders/ropes/scaffolds, only

19   occasionally balance, stoop, kneel, crouch and crawl. She must avoid exposure to hazards such

20   as moving mechanical parts and unprotected heights, and avoid exposure to excessive vibration.

21   (AR 26.)[5]

22        As the ALJ discussed in his opinion, Plaintiff had right knee surgery in September of

23   2018, and left knee surgeries in May 2020.  (AR 28.)  The Court agrees with Defendant that after

24   the September 2018 surgery, Plaintiff's records demonstrate she recovered quickly and

---

25   [5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing

26   up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good
     deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

27   controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do
     substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary

28   work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of
     time."  20 C.F.R. § 404.1567(b).

significantly.  As noted by the ALJ, "[d]uring a right knee, two-week post-operative evaluation in September 2018, the claimant had some muscle weakness and stiffness but her knee range of motion was 100 degrees at flexion, and she was ambulating without assistance.  (AR 28.)  The ALJ's notation is accurate.  This record demonstrates that on September 27, 2018, Plaintiff had muscle weakness and stiffness; right knee pain was a 4 out of 10 on an average; Plaintiff stated that knee pain is better; and Plaintiff was ambulating without assistance on a gait exam.  (AR 304.)  The postoperative plan noted: Plaintiff's "weight bearing status is now full weight bearing . . . as tolerated . . . patient is progressing as expected . . . within normal limits."  (AR 304.)  The record noted no restrictions on knee range of motion, with weight bearing as tolerated.  (Id.)  The Court notes that in the main summary, Plaintiff indicates a pain level of 4 out of 10, however, under Impression/Plan, pain is noted as 2 out of 10.

The ALJ also noted that "the claimant completed a knee survey in September 2018 rating her symptoms of knee pain and/or stiffness as only mild or moderate for various areas of daily activities/functioning (e.g., going up and down stairs, standing upright, twisting/pivoting on knee, bending to pick up objects)."  (AR 28.)  The ALJ's description is accurate.  (AR 405.)

The ALJ stated that in November of 2018, Plaintiff "reported her knee was better, rating her pain at 2 out of 10 on an average day, and she was satisfied with the results of her surgery."  (AR 28.)  The ALJ also noted that Dr. Surdyka noted Plaintiff "was ambulating without assistance, she was able to do a straight leg raise, and she was full weigh bearing, having made significant progress using physical therapy."  (Id.)  This is accurate.  Specifically, on November 8, 2018, Plaintiff appeared for a post-operation check, with Dr. Surdyka.  The record indicates that Plaintiff stated her right knee pain was 2 out of 10 on an average day in severity, that she has used physical therapy with significant progress from the patient's perspective in the postoperative period, that she believes the knee pain is getting better, and that she is satisfied with the current results.  (AR 309.)  On a gait exam, Plaintiff was noted as ambulating without assistance, and also that she was able to do a straight leg raise.  (Id.)  However, while the main summary indicates a pain level of 2 out of 10, the Court notes that the record also indicates in the Impression/Plan area, a pain level of 4 out of 10.  (Id.)  It is not clear what the root of the

1  discrepancy is, and appears to be an inverse of the above.  (See AR 304, 309.)

2       The ALJ acknowledged that in December of 2018, Plaintiff "reported her knee at 5 out of

3  10 on an average day, but she felt her knee was better and the examiner observed that she

4  ambulated without assistance and had no pain with full range of motion." (AR 28-29.)  This

5  record reflects that on December 27, 2018, Plaintiff did report a level 5 of pain, but also that she

6  believed the pain was better, and that she was satisfied with the results.  (AR 314.)  The gait

7  exam showed Plaintiff ambulating without assistance, and the range of motion demonstrated 120

8  degrees with no pain with full range of motion.  (Id.)  Here, under Impression/Plan, the pain level

9  does reflect the same reported level of 5.  (Id.)

10       The ALJ then moved forward to June of 2019, noting the following:

> By June 2019, a little less than a year after the claimant's alleged
> disability onset date, she appears to have recovered pretty well
> from her right knee arthroplasty (Ex. 5F/1). During a follow-up
> evaluation with Dr. Surdyka, the claimant reported only occasional
> functional limitations and that her condition was better. The
> surgeon noted that claimant had "no pain with full [range of
> motion]; her knee had normal alignment, no deformity, no
> tenderness and her lower extremity was "neurovascularly intact,"
> with 4+ strength in the right quadriceps and full 5/5 strength in the
> right hamstring with normal muscle tone (Id). Dr. Surdyka noted
> claimant's pain was 2 out of 10 in severity, assessed her knee as
> stable and noted she was ambulating without assistance (Id).
> Significantly, Dr. Surdyka concluded claimant "has had a full
> recovery with no restrictions," achieving "maximal recovery
> level." The doctor further advised claimant to continue with
> physical therapy or home exercise program (Id).

20  (AR 29.)  The ALJ's description is accurate of the June 6, 2019, record.  (AR 433 ("patient has

21  had a full recovery with no restrictions").)  Plaintiff did report that the right knee pain was

22  exacerbated by activity, that the pain was described as cramp-like and burning and associated

23  with thigh pain, low back pain, and limping, but also that physical therapy and NSAIDs partially

24  alleviated symptoms.  (Id.)

25       The ALJ acknowledged some records reflected ongoing right knee/lower extremity

26  symptoms and limitations, but found the records did not support greater limitations.  (AR 29.)

27  Specifically the ALJ noted in February of 2019, Plaintiff reported that due to knee pain, she had

28  been walking two times per week.  (AR 29.)  The Court notes that it appears the ALJ mistook the

1    Plaintiff's birth month for the office visit date, as the record referenced appears to be dated

2    November 7, 2019, not February of 2019.  (Ex. 7F at 60, AR 496.)  The record notes that

3    Plaintiff complains of "pain in both knee x2 months she's taking naproxen for pain but pt states

4    it's not helping anymore . . . reports she walks 2 times per week due to kneed pain that worsen

5    x4/weeks ago."  (AR 496.)  It does not appear the ALJ's reference to February instead of

6    November necessarily impacted the ALJ's intended reasoning, as the ALJ placed the description

7    of this record after the June 2019 record, and began the description by stating these were

8    "subsequent treatment records [that] reflect some ongoing right knee/lower extremity

9    symptoms/limitations."  (AR 29.)  Thus, while the ALJ wrote February, the ALJ's analysis

10   implied the record was subsequent to the June 2019 record.  (Id.)

11        Thereafter, the ALJ moved on to June of 2020.  (Id.)  The ALJ noted that

12        During a June 2020 follow-up evaluation for claimant's right knee,
13        Dr. Surdyka noted claimant's report of "no major knee symptoms"
     including "never or rarely causes limping," severe only "after
14   walking 30 minutes or more," "not affect ability to climb a flight
     of stairs," and "affects the ability to perform household shopping
15   to no extent at all" (Ex. 6F/1). In addition, the claimant reported
     her "knee pain/symptoms is 1 out of 10 on an average day" (Id).
16   On exam, Dr. Surdyka noted claimant's knee had normal
     alignment with no deformity, no tenderness, no warmth; her right
17   quadriceps and hamstring strength was full 5/5 with normal muscle
     tone, and her right knee was "stable" and "normal" (Id). Dr.
18   Surdyka again assessed claimant as having "had a full recovery
     with no restrictions" and "achieved … maximal recovery level"
19   (Id).

20   (AR 29.)  The ALJ's description is accurate as to the June 4, 2020, record from Dr. Surdyka.

21   (AR 435.)  The Court notes that the Plaintiff there also reported that the right knee pain was

22   exacerbated by activity and that it becomes severe after walking 30 minutes or more.  (Id.)  Thus,

23   despite the report of difficulty after walking 30 minutes, Plaintiff reported the knee pain does not

24   affect the ability to climb stairs or do household shopping, reported her "knee pain/symptoms

25   [were] 1 out of 10 on an average day," and an examination was essentially normal, with no

26   deformity; no tenderness; no warmth; no instability; and full (5/5) strength in her right

27   quadriceps and hamstring (AR 435).  Plaintiff's surgeon repeated that she had no restrictions.

28   (AR 435.)

1      The Court now excerpts the Plaintiff's summary of the evidence regarding the left knee,

2   before reviewing the ALJ's findings pertaining to the left knee:

3           After several weeks of physical therapy, Plaintiff returned to Dr.
            Surdyka. She explained that she still had cramping and "burning
4           pain" radiating up the thigh. She noted that she continued to limp.
            Physical therapy and NSAIDs were said to only "partially" relieve
5           her symptoms. (AR 433). While Dr. Surdyka opined that the right
            knee was "recovered," he noted that Plaintiff should have
6           continuing therapy for the left knee and restricted weight bearing
            on the left side to "as tolerated." (AR 434).
7
            On August 5, 2019, Plaintiff returned to her primary care providers
8           where exam revealed redness and swelling of both lower
            extremities and Doppler exams were ordered. (AR 515). While the
9           Doppler studies returned normal results (AR 550, 551), on
            September 6, 2019, Plaintiff still reported continuous knee pain
10          without improvement and the providers noted bilateral varicose
            veins. (AR 508). As the Doppler studies were normal. Her primary
11          care provider ordered x-ray of the left knee. Plaintiff had reported
            that Naproxen was no longer controlling her pain. (AR 501).
12
            The November 28, 2019 x-ray of the knee was within normal
13          limits. (AR 549). Nevertheless on December 9, 2019, Plaintiff
            reported to her primary care provider, Wendy Arzinga that she was
14          having pain in the left knee and exam was positive for bilateral
            knee tenderness. (AR 477, 480). An MRI was ordered.
15
            The February 28, 2020 MRI of the left knee was positive for a
16          1.5cm "large osteochondral lesion" at the medial aspect of the
            lateral femoral condyle, anteriorly, with high grade chondral lose,
17          and mid subarticular bony edema. (AR 547, 568). A referral to an
            orthopedist for the left knee was executed. (AR 459). On March
18          19, 2020, Plaintiff met with orthopedic surgeon Dr. Srivastava. She
            consistently reported knee pain that interrupted her ability to
19          perform ADLs and sleep. (AR 566). Exam was positive for
            decreased range of motion, crepitus and MacMurray's and
20          Lachman's special tests. Dr. Srivastava recommended surgery.
            (AR 567). On May 29, 2020, partial medial meniscectomy and
21          lateral meniscectomy were performed by Dr. Srivastava. (AR 576).

22          On June 4, 2020, Plaintiff returned to the first surgeon, Dr.
            Surdyka regarding the right knee. She reported that she continued
23          to have severe pain after walking only thirty minutes. She noted
            that she'd resorted to icing the knee and elevating the leg for pain
24          relief. (AR 435). Exam of the knee was within normal limits. (Id).
            Relative to the left knee, Plaintiff's began physical therapy post-
25          surgery on June 15, 2020. (AR 589). Quadricep strength on the left
            was 3+/5. Plaintiff's gait was antalgic. She had "decreased stance
26          time." (Id). By the final note of the Record, July 1, 2020, Plaintiff
            still had not achieved physical therapy goals, but was "making
27          progress." (AR 581).

28   (Br. 4-5.)

                                        14

1    As to the left knee, the ALJ acknowledged that Plaintiff reported some knee pain and

2   issues in late 2019 and early 2020, the MRI, and the partial medial meniscectomy surgery,

3   however, found the treatment and exam records did not support allegations of disabling

4   symptoms:

5           As to claimant's left knee, treating records in late 2019 and early
            2020 note her report of some knee pain and issues, an MRI
6           revealed a large osteochondral lesion with high-grade chondral
            loss and osteoarthritic changes, and she underwent partial medial
7           meniscectomy surgery, May 2020 (Ex. 8F/8, 16, 18-19; 9F/20-21,
            24). However, treatment/exam records do not support allegations
8           of disabling limitations. The claimant's pre-operative left knee
            examination indicated some tenderness, "mild swelling" and
9           positive McMurray's test; however, active range of motion of 0 to
            120 degrees flexion, negative Drawer and Lachman tests, and her
10          "neurovascular intact" (Ex. 8F/19; 9F/21). The claimant underwent
            a course of physical therapy after left knee surgery, and two weeks
11          post-operatively, a provider noted she was ambulating with pain
            and standing more than 10 minutes (Ex. 9F/10). By July 2020, a
12          physical therapist noted claimant had some ongoing soreness on
            calves and in front of knee but "less knee pain overall" and
13          assessed her as making progress (Ex. 9F/2).

14   (AR 29.)

15   As noted, two weeks after surgery, on June 15, 2020, Plaintiff reported "ambulating with

16   pain and standing more than 10 mins.  Pt states the pain was intense prior to [surgery] . . . .Pt.

17   reports difficulty with HH chores due to pain and points to the back of the knee and calf."  (AR

18   589.)  The assessment noted that the presentation was consistent with post-operation, with the

19   left knee having decreased range of motion and weight bearing tolerance, and noted that Plaintiff

20   "has good rehab potential with attainable functional improvement and requires skilled therapy in

21   order to improve ROM, strength and gait."  (Id.)  As the ALJ then noted, two weeks later on July

22   1, 2020, and as Defendant emphasizes, the most recent treatment note in the record, Plaintiff

23   reported for physical therapy, and it was noted "[l]ess knee pain overall but the back of the LE

24   gets sore on the calves as does the front of the knee," and that Plaintiff was "making progress

25   with [weight bearing] and therex goals with less tissue irritability since starting therapy."  (AR

26   581.)

27   The ALJ then concluded that he could not defer or give any specific evidentiary weight,

28   including controlling weight, to any prior administrative medical finding(s) or medical

15

opinion(s), including those from medical sources.  (AR 30.)  The ALJ summarized the State

agency medical opinions:

> State agency medical consultants R. Fast, M.D., and C. Bullard, M.D., reviewed the record in October 2018 and November 2018, respectively, and assessed the claimant as capable of performing work at the medium exertional level beginning twelve months after her alleged onset date (Ex. 2A; 4A/7-9; 6A; 8A/8-10). This assessed capacity includes the ability to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour day. The medical consultants further assessed postural limitations to no more than occasional climbing of ladders/ropes/scaffolds and stairs/ramps, and occasional balance, stooping, kneel, crouching and crawling. In addition, the medical consultants assessed environmental restrictions that claimant avoid even moderate exposure to hazards and no more than occasional uneven terrain (Id). In support of this assessment, Dr. Fast noted the statement of claimant's orthopedic surgeon (Dr. Surdyka) in December 2018 indicating that claimant could not return to perform her agricultural fieldwork, but Dr. Fast projected that beginning July 2019, the claimant would have the capacity to perform medium exertional level work with limited climbing and postural (Ex. 8A/10). Dr. Bullard affirmed Dr. Fast's assessment of capacity for medium exertional work, noting that while claimant alleges progression of her symptoms, "she is recovering as expected from her [total knee arthroplasty] and on January 9, 2019, she was [discharged] from [physical therapy]." Dr. Bullard further noted that as of March 2019, claimant "was only on NSAIDS for pain control" (Id).

(AR 30.)  The ALJ considered the State agency medical opinions somewhat persuasive, but

found the assessment inconsistent with the treating physician's opinion as based on a more

longitudinal view, and found greater limitations were proper than those assessed by the State

agency medical opinions:

> These assessments are somewhat persuasive. The state agency medical consultants have specialized expertise in medical impairments, as well as knowledge of Social Security Act disability programs and regulations, and based their assessment on the medical record at the time of review, including the objective, clinical findings. However, the medical consultants had the opportunity to review only some of the medical record through 2018. While these assessments are based on objective medical findings (e.g., imaging, surgeries, knee joint pain/tenderness with decreased range of motion one exams), the undersigned finds the assessment of work capacity at the medium exertional level overestimates the claimant's functional capacities given her documented surgical history and ongoing knee complaints, and is inconsistent with the assessment by claimant's treating physician. Based on the longitudinal record, including medical evidence

> received at the hearing level, the undersigned finds that the overall record supports greater limitations in lifting/carrying at the light exertional level. Nevertheless, the medical consultants' overall assessment reinforces that claimant's impairments would not preclude her from performing work at the light exertional level.

(AR 30-31.)

The Court finds the ALJ properly considered that although the medical consultants supported their findings with evidence in the record at the time—late 2018 and early 2019—subsequent evidence that they did not consider indicated that Plaintiff was incapable of medium work (AR 30-31), and that the findings supported a determination that Plaintiff could do light work. See 20 C.F.R. § 404.1520c(c)(1)-(2) (ALJ evaluates medical opinions as to supportability and consistency with the record evidence to determine persuasiveness); Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022) ("The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.") (citations omitted).

The ALJ also found Plaintiff's orthopedic surgeon's opinion persuasive and supported a determination that Plaintiff is no longer able to perform work at the heavy or medium exertional level:

> Orthopedic surgeon Dr. Surdyka opined (December 2018) that claimant would not be able to perform her past farm fieldwork on a permanent basis status-post right knee arthroplasty (replacement) (Ex. 1F/21). This assessment is persuasive. The treating provider had the opportunity to perform the claimant's knee surgery, and had examined and treated the claimant on multiple occasions during the adjudicative period. The opinion is consistent with the objective medical evidence and overall record, and supports that claimant is no longer able to perform work at the medium or heavy exertional level.

(AR 31.) The Court also finds the ALJ's analysis and findings pertaining to Dr. Surdyka satisfy the regulations and applicable law. See 20 C.F.R. § 404.1520c(c)(1)-(2); Woods, 32 F.4th at 792.

The ALJ then concluded that "[a]fter considering all of the evidence, the undersigned has determined that a limitation to light exertional-level work subject to the postural and

1    environmental/hazard restrictions as set for above is a correct assessment of the claimant's

2    residual functional capacity," and that "[w]hile the claimant has some ongoing impairments, the

3    objective medical evidence record does not support limitations to the extent alleged."  (AR 31.)

4         Based on the above review of the ALJ's opinion, the relevant medical records, and the

5    applicable law, the Court disagrees with Plaintiff's contention that the ALJ erred here because

6    once an ALJ determines that none of the available opinion evidence captures the totality of a

7    claimant's functional limitations, the ALJ faces an evidentiary deficit.  Plaintiff refers the Court

8    to Banks, wherein the court provided the following legal standards:

> An " 'ALJ cannot arbitrarily substitute his own judgment for
> competent medical opinion ... [,]' " *Balsamo v. Chater,* 142 F.3d
> 75, 81 (2d Cir.1998) (citations omitted); *Day v. Weinberger,* 522
> F.2d 1154, 1156 (9th Cir.1975), and he "must not succumb to the
> temptation to play doctor and make [his] own independent medical
> findings." *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996).
> Rather, the ALJ's RFC determination or finding must be supported
> by medical evidence, particularly the opinion of a treating or an
> examining physician. *Cf. Penny v. Sullivan,* 2 F.3d 953, 958 (9th
> Cir.1993) ("Without a personal medical evaluation it is almost
> impossible to assess the residual functional capacity of any
> individual."); *Nelson v. Heckler,* 712 F.2d 346, 348 (8th Cir.1983)
> (per curiam) (" '[T]o attempt to evaluate disability without
> personal examination of the individual and without evaluation of
> the disability as it relates to the particular person is medical
> sophistry at its best.' " (citation omitted)). However, where "the
> record contains conflicting medical evidence, the ALJ is charged
> with determining credibility and resolving the conflict." *Benton v.
> Barnhart,* 331 F.3d 1030, 1040 (9th Cir.2003); *Batson v.
> Commissioner of the Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th
> Cir.2004).
>
> Here, Dr. Ella–Tamayo diagnosed plaintiff as status post-
> laryngectomy and tracheostomy, and found he is able to do the full
> range of medium work, with no speech or environmental
> limitations. A.R. 664–70. Dr. Ella–Tamayo's opinions constitute
> substantial evidence to support the  RFC determination or finding
> by the ALJ.[12] *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th
> Cir.2001).

24   Banks, 434 F. Supp. 2d at 805–06.  Defendant responds that the quotation from Banks is empty

25   boilerplate, which the Banks court did not specifically apply to the facts of the case.  While there

26   was no error in Banks under that standard, more importantly here, the Court finds the ALJ did

27   not arbitrarily substitute his own judgment for that of another medical opinion, the records did

28   include personal medical evaluations of the Plaintiff, and the ALJ weighed the opinions and all

1  of the evidence in the record, reasonably resolving any conflicting evidence.

2      Plaintiff also cites Padilla, however, Defendant is correct that case involved an ALJ who

3  improperly determined that the claimant had no severe impairments, based on contradictory

4  testimony from a medical expert, and wholly distinguishable from the facts and challenge here.

5  See Padilla, 541 F. Supp. 2d 1102, 1107 (C.D. Cal. 2008) ("Here, based solely on the testimony

6  of Dr. Gerber, the ALJ found plaintiff does not have a severe impairment or combination of

7  impairments . . . [h]owever, in addition to opining plaintiff does not have a severe impairment . .

8  . Dr. Gerber agreed with Dr. Siciarz's opinion that plaintiff can perform the 'medium range of

9  activity with the addition of [a] seizure precaution[,]' [and thus] [t]hese opinions of Dr. Gerber's

10 are inconsistent and ambiguous.").

11     As for Plaintiff's citation to Lamas, Defendant concedes the case is relevant, but argues it

12 contradicts Plaintiff's argument as although the court determined the ALJ erred by determining

13 the claimant's RFC without relying on an opinion, that error was harmless because—just like in

14 this case—the RFC limitations were more restrictive than the medical opinions. First, the Court

15 finds Lamas distinguishable in that there, the court found that in addition to the mental RFC

16 being based solely on treatment notes and testimony, the treatment notes did not provide

17 sufficient indications of Plaintiff's functional limitations:

18      The Commissioner contends that, because the evidence is
        susceptible to more than one rational interpretation, the ALJ's
19      conclusion must be upheld. (Doc. No. 20 at 9.) However, the ALJ
        in this case did not simply synthesize the medical evidence and
20      opinions to reach an RFC determination. The ALJ's RFC
        determination regarding Plaintiff's mental impairments appears to
21      be based solely on treatment notes and Plaintiff's
        testimony. See AR 30. However, Plaintiff's treatment notes do not
22      provide sufficient indications of Plaintiff's functional limitations
        and are unclear as to their impact on Plaintiff's ability to work.
23      Thus, the ALJ apparently formulated an RFC based on his
        interpretation of the medical evidence, which is improper. The ALJ
24      was not qualified to translate the data into functional limitations
        and engage in his "own exploration and assessment" of Plaintiff's
25      impairments. See McAnally v. Berryhill, 2020 WL 1443734, at *7
        (S.D. Cal. Mar. 25, 2020) (quoting Day v. Weinberger, 522 F.2d
26      1154, 1156 (9th Cir. 1975)).

27 Lamas v. Saul, No. 1:19-CV-00852-BAM, 2020 WL 6561306, at *9 (E.D. Cal. Nov. 9, 2020).

28 Here, the Court finds the examination notes above, particularly the post-operative notes, do

                                        19

1    provide numerous indications of functional limitations as to Plaintiff's knees.  The Court also

2    agrees Lamas indicates that any error here would be harmless.  2020 WL 6561306, at *10 ("The

3    Court finds that the ALJ's error in this case was harmless [as] [t]he limitations that the ALJ

4    included in the RFC pertaining to Plaintiff's mental impairments were more restrictive than those

5    to which the medical opinions of record opined, yet the ALJ nonetheless found that there would

6    be work available with those more stringent limitations."); see also Johnson v. Shalala, 60 F.3d

7    1428, 1436 n.9 (9th Cir. 1995) ("[T]his overinclusion of debilitating factors is harmless simply

8    because if a person can do a job that requires increased concentration, the claimant is also

9    capable of performing work that requires less concentration.").

10          As for Plaintiff's argument that the ALJ did not adequately cite evidence to show that she

11    was more limited than Drs. Fast and Bullard opined (Br. 9-10), the Court agrees with Defendant

12    that the ALJ did so in his preceding discussion of the evidence (AR 28-30), and that the Court

13    considers the agency's decision as a whole.  Kaufmann v. Kijakazi, 32 F.4th 843, 851 (9th Cir.

14    2022) ("Looking to *all* the pages of the ALJ's decision, the court held that, contrary to its original

15    ruling, the ALJ had, in fact, explained which daily activities conflicted with which parts of

16    Claimant's testimony.") (emphasis in original).  The Court agrees that looking to those preceding

17    pages, it is apparent that the ALJ was referring to evidence such as Plaintiff's later knee surgery

18    that these medical consultants did not see.  (AR 30-31.)

19          As for Plaintiff's argument that the ALJ was required to explain why "he failed to assess

20    any" other limitations (Br. 10), the Court agrees with Defendant that the ALJ was not required to

21    discuss a range of possible conclusions and then explain why he picked one, as Plaintiff implies.

22    See Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether

23    there is substantial evidence that could support a finding of disability, but whether there is

24    substantial evidence to support the Commissioner's actual finding that claimant is not

25    disabled.").  The Court also finds that the evidence here was not ambiguous, and it was

26    reasonable for the ALJ to determine that the evidence reviewed meant Plaintiff could perform

27    light work with additional exertional and postural limitations.

28          In consideration of the record, the ALJ's opinion, the parties' arguments, and applicable

1  law, the Court finds no error in the ALJ's RFC determination.  As previously noted, the RFC is

2  not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See

3  20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the

4  responsibility of the ALJ, not the claimant's physician, to determine residual functional

5  capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical

6  evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v.

7  Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195; see also Lingenfelter,

8  504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians,

9  the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in

10 the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r

11 of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for

12 resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533

13 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the

14 medical evidence.").

15      The ALJ was not required to adopt the findings or opinion of a physician but rather was

16 required to determine the RFC based on all of the evidence in the record.  See 20 C.F.R. §

17 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . .

18 your residual functional capacity . . . the final responsibility for deciding these issues is reserved

19 to the Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015)

20 ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC");

21 Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's

22 physician, to determine residual functional capacity.").  The regulations provide that the agency

23 "will not defer or give any specific evidentiary weight, including controlling weight, to any

24 medical opinion(s) or prior administrative medical finding(s), including those from your medical

25 sources." 20 C.F.R. § 404.1520c(a).

26      The Court finds the ALJ utilized substantial evidence in the record in making the RFC

27 determination, and Plaintiff has not demonstrated remandable error.  To the extent Plaintiff

28 argues the record needs to be further developed or by ordering a consultative exam, the facts in

this case are not similar to other instances in which the ALJ was found to have a duty to further develop the record.  See Ludwig v. Astrue, 681 F.3d 1047, 1055 n. 30 (9th Cir. 2012) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." (quoting Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir.2001))); Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis); see also Lamas, 2020 WL 6561306, at *11 ("The ALJ did not find that the record was ambiguous or inadequate to determine disability, nor does Plaintiff identify any ambiguous or unclear treatment notes, medical opinions, or other evidence.").

Accordingly, the Court concludes the ALJ's RFC determination to be proper, reasonable, based on substantial evidence in the record, and not deficient due to lack of a directly adopted medical opinion.  See Smolen, 80 F.3d at 1279 (substantial evidence more than a scintilla, but less than a preponderance); Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  Here, the ALJ looked at the evidence and reached a reasonable conclusion about Plaintiff's limitations based on that evidence.  As Defendant emphasizes, there is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022)[6]; Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record . . . and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (citations omitted).

---

[6]  The Court notes the Ninth Circuit was observing this presumption in relation to the ability of the ALJ to evaluate and give weight to physician opinions.  53 F.4th at 488.

1

2    **B.    The Court Finds the ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Symptom Testimony and Did Not Err in Deciding to Omit Such Limitations from the RFC Assessment**

3

4        Plaintiff argues the ALJ failed to include work-related limitations in the RFC consistent

5    with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for

6    rejecting Plaintiff's subjective complaints.  (Br. 11.)

7        1.    The Clear and Convincing Standard for Evaluating Symptom Testimony[7]

8        "An ALJ is not required to believe every allegation of disabling pain or other non-

9    exertional impairment."  Orn, 495 F.3d at 635 (internal punctuation and citations omitted).

10   Determining whether a claimant's testimony regarding subjective pain or symptoms is credible

11   requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th

12   Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical

13   evidence of an underlying impairment which could reasonably be expected to produce the pain

14   or other symptoms alleged."  Lingenfelter, 504 F.3d at 1036  (internal punctuation and citations

15   omitted).  This does not require the claimant to show that her impairment could be expected to

16   cause the severity of the symptoms that are alleged, but only that it reasonably could have caused

17   some degree of symptoms.  Smolen, 80 F.3d at 1282.

18       Second, if the first test is met and there is no evidence of malingering, the ALJ can only

19   reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

20   convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social

21   Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this

22   conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude

23   the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

24   the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

25       Factors that may be considered in assessing a claimant's subjective pain and symptom

26   testimony include the claimant's daily activities; the location, duration, intensity and frequency

27   _____

28   [7]  Although Defendant maintains disagreement with the standard in order to preserve the issue for future appeals, Defendant acknowledges the clear and convincing standard is the applicable standard for weighing credibility in the Ninth Circuit.  (Opp'n 7 n.4.)

of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284).

### 2.   Plaintiff's Arguments

Plaintiff argues the ALJ failed to set forth reasons, consistent with and supported by the evidence, for discounting Plaintiff's complaints of symptoms related the consecutive impairments of the bilateral knees.  Plaintiff contends the first reason amounts to utilizing objective evidence alone, and fails to follow the proper standards, and the ALJ fails to provide any clear and convincing reason for disputing Plaintiff's statements regarding the limiting factors.  (Br. 12.)  Plaintiff suggests that the ALJ recites medical evidence (AR 22-24), but provides no nexus between the evidence and the ALJ's finding of inconsistency.  Plaintiff submits that mere recitation of evidence fails to meet the "clear and convincing" standard.  See Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Although the ALJ did provide a relatively detailed overview of Lambert's medical history, 'providing a summary of medical evidence ... is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.' " (emphasis in quoted source) (quoting Brown-Hunter, 806 F.3d at 494)).

As for "reported activities/demonstrated functioning," Plaintiff argues this finding lacks specificity entirely, as for instance, Plaintiff's "reported activities" regularly indicate that she is unable to stand or walk for prolonged periods, affecting her ability to perform activities of daily living (AR 45-46, 50, 51, 52, 54, 249, 252, 298, 307, 312, 314, 384, 403, 435, 504); also indicate that Plaintiff must elevate her legs while seated (52-53, 314, 403); and also demonstrate that

Plaintiff relies on others to perform activities that require prolonged standing or walking (45-46, 50).   Plaintiff contends that nowhere does the ALJ state how the reported activities are inconsistent with Plaintiff's allegation that she is unable to stand or walk for prolonged periods, or requires a cane for ambulation due to bilateral knee pain that required surgical intervention. Plaintiff submits that the ALJ should have included the inability to stand and walk for more than thirty minutes and the requirement that Plaintiff use a cane due to pain, weakness, cramping and swelling of the bilateral lower extremities in the RFC.

      3.    <u>The Court Finds the ALJ Properly Provided Clear and Convincing Reasons</u>

The ALJ summarized Plaintiff's symptom testimony as follows:

> At the hearing, the claimant testified to ongoing problems with bilateral knee pain and swelling that prevent her from working. She indicated that her only past work is as an agricultural field worker, including having to lift crates weighing between 50 and 80 pounds, and she can no longer lift more than 25 pounds. She indicated that she does not speak or understand English but speaks and writes in Spanish. She indicated she is married, has six children, and lives with her husband and three children.
>
> She testified that before undergoing right knee surgery, the knee joint was "bone-on bone," and the pain was unbearable, and pain medications were not helping enough. She stated that she has been using cane for ambulating since her first knee surgery, noting she uses always uses it when she goes outside the home. Since having right knee surgery, her pain is "not the same" but she still has pain, and she cannot kneel down, or stand or walk for prolonged periods, noting she can stand only 10 minutes at a time with or without a cane, and walk for up to 30 minutes at a time using a cane. She stated that her most recent surgery was on her left knee; she had been supporting her weight on that knee since her right knee surgery, she developed worsening pain and imaging (x-ray and MRI) showed thinning cartilage. She claimed she has not fully recovered from her left knee surgery; she still has a burning pain and continues to use a cane.
>
> She testified she also has swelling in her knees and has to elevate her legs and apply ice on both knees to reduce pain and swelling, as well as help her sleep. She also indicated she has lost weight since before her surgeries by changing her diet, but has not lost weight because of exercise noting if she were able to walk for exercise, she would lose more weight. The claimant further testified to having issues with side effects from some of her medications including drowsiness and feeling fatigue. She further testified to taking medications for depression and anxiety, and the anti-depressant causes her to feel drowsy. As to daily activities, the claimant indicated her husband helps her with the household chores, including cleaning and cooking, noting she is able to stand

> for only 10 minutes at a time due to problems with her knees and surgeries. She noted that she helps load the laundry, and helps her husband prepare the meals, as well as help her children with school work at times. In addition, claimant will do some cleaning with breaks, take naps, and shop for groceries with her husband.

(AR 27.)  The ALJ found that Plaintiff's claims were "not entirely consistent with the medical evidence and other evidence in the record," specifically finding "imaging studies, neuromuscular examinations, treatment records, and reported activities/demonstrated functioning are not consistent with the degree of disabling severity alleged."  (AR 28.)

As summarized and reviewed above, the ALJ thoroughly evaluated the objective evidence.  (AR 28-30.)  As part of the overall analysis, the Court finds the ALJ properly found the objective medical evidence did not support Plaintiff's claims of disabling symptoms and functional limitations.  A lack of objective medical evidence is insufficient standing alone under the clear and convincing standard.  See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work . . . [h]owever, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects . . . [and] [t]he ALJ also pointed out ways in which Rollins' claim to have totally disabling pain was undermined by her own testimony about her daily activities.") (citing 20 C.F.R. § 404.1529(c)(2)); Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Nonetheless, as this Court has maintained, there is a difference between a lack of

objective medical evidence, and inconsistency with the objective medical evidence.  See Garcia
v. Comm'r of Soc. Sec., No. 1:21-CV-00328-BAK, 2022 WL 3908307, at *9–12 (E.D. Cal. Aug.
30, 2022) ("The distinction between medical evidence simply failing to support a plaintiff's
testimony and medical evidence being inconsistent is critical because the latter may qualify as a
specific, clear, and convincing reason to reject a plaintiff's testimony while the former does
not.").  Indeed, the Ninth Circuit has recently clarified this difference:

> Claimants like Smartt sometimes mischaracterize *Burch* as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of *Burch*. When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases. *See, e.g., Chaudhry v. Astrue*, 688 F.3d 661, 672–73 (9th Cir. 2012) (affirming an ALJ's determination that interpreted and preferred objective medical evidence to subjective testimony); *Burch*, 400 F.3d at 681 (affirming an ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and a claimant's daily activities); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after "finding no objective medical evidence to support [claimant's] descriptions of her pain and limitations," and "that [claimant] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations).
>
> Instead, what *Burch* requires is that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise. That is, an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony. *Burch*, 400 F.3d at 681; *see also Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987) ("If objective medical evidence must establish that severe pain exists, subjective testimony serves no purpose at all."). That—and only that—is what *Burch* forbids.
>
> Indeed, if *Burch* was applied as aggressively as Smartt insists, an ALJ would be required in many cases to simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case. This misinterpretation of *Burch* conflicts with other precedents from our court, where we've made clear that an ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be

available for the asking, a result plainly contrary to" the Social Security Act. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Smartt v. Kijakazi, 53 F.4th 489, 498–99 (9th Cir. 2022) (footnoted omitted).

Here, as reviewed in the preceding section, the ALJ made extensive findings concerning Plaintiff's reports of function and pain post-surgery that the Court finds reasonably demonstrate inconsistency with the Plaintiff's claims of functional limitations and symptoms. (AR 28-29.) For example, the ALJ considered inconsistencies in the evidence, such as one of Plaintiff's treatment providers telling her that she had reached full recovery "with no restrictions" after her right knee procedure (AR 29, 435), and that only a few weeks after her right knee surgery, Plaintiff reported that she had only mild or moderate difficulties with any movements (AR 28, 405). Therefore the Court finds the ALJ's conclusion that the "neuromuscular examinations, treatment records, and . . . demonstrated functioning are not consistent with the degree of disabling severity alleged" (AR 28), was a clear and convincing reason to reject the claims. Smartt, 53 F.4th at 498–99; Tommasetti, 533 F.3d at 1041; Carmickle, 533 F.3d at 1161.

Defendant argues the ALJ also properly considered Plaintiff's activities as Plaintiff reported driving very little and needing to rest while doing chores (AR 27), but also told her treating surgeon that she was able to walk for 30 minutes at a time and her knee pain did not affect her ability to shop "at all." (AR 29, AR 435.)

The ALJ may consider the claimant's daily activities in making a credibility determination. See Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017); Thomas, 278 F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms . . . Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities."). However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." Vertigan, 260 F.3d at 1050 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). In fact, "many home activities are not easily transferable to what may be the more grueling environment of the

1   workplace." <u>Fair</u>, 885 F.2d at 603.  Only if a claimant's level of activities is inconsistent with

2   her claimed limitations would activities of daily living have any bearing on the claimant's

3   credibility.  <u>Reddick</u>, 157 F.3d 722.

4         There are two ways an ALJ may use daily activities for an adverse credibility finding.

5   <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007).  First, daily activities can form the basis of an

6   adverse credibility determination if the claimant's activity contradicts the claimant's testimony.

7   <u>Id.</u>  Second, "daily activities may be grounds for an adverse credibility finding 'if a claimant is

8   able to spend a substantial part of his day engaged in pursuits involving the performance of

9   physical functions that are transferable to a work setting.' "  <u>Id.</u> (quoting <u>Fair v. Bowen</u>, 885 F.2d

10  597, 603 (9th Cir. 1989)).  The ALJ must make specific findings as to the daily activities and

11  their transferability to conclude that the claimant's daily activities warrant an adverse credibility

12  determination.  <u>Orn</u>, 495 F.3d at 639.

13        Here, although the Court finds the ALJ could have made explicit additional explanatory

14  connections between his findings regarding daily activities and why they were inconsistent with

15  the Plaintiff's reported limitations, the Court finds sufficient support in the record to find the

16  ALJ's reason was clear and convincing.  <u>See</u> <u>Smartt</u>, 53 F.4th at 499 ("The standard isn't whether

17  our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the

18  power to convince."); <u>Kaufmann</u>, 32 F.4th at 851–52 ("Looking to the entire record, substantial

19  evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her

20  limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and

21  vacationing."); <u>Lopez v. Colvin</u>, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *16 (E.D. Cal.

22  July 8, 2014) ("While the ALJ did not explain that Plaintiff's daily activities were *consistent* with

23  specific work activity, the ALJ found Plaintiff's daily activities were *inconsistent* with the

24  severity of symptoms he alleged . . . [b]ecause Plaintiff's daily activities were inconsistent with

25  the disabling symptoms he alleged, the ALJ properly found such claims not credible.").

26        Even if the ALJ erred in relying on daily activities, the Court finds the ALJ provided

27  additional clear and convincing records.  In addition to a lack of, as well as inconsistency with,

28  objective medical evidence to support disabling limitations, the Court finds the ALJ properly

1    relied on his review of Plaintiff's treatment and Plaintiff's reporting of functional restrictions in

2    supporting the credibility finding.   (AR 28 ("imaging studies, neuromuscular examinations,

3    treatment records, and reported activities/demonstrated functioning are not consistent with the

4    degree of disabling severity alleged").)   The ALJ considered Plaintiff's treatment, noting her

5    knee surgeries, physical therapy, and recommendations to exercise more (AR 28-30, 314, 379,

6    433, 501, 581, 589); and the ALJ noted that Plaintiff's function and pain improved after surgeries

7    on both her knees (AR 28-29, 314, 433, 581, 589).

8           As noted above, factors that may be considered include the claimant's daily activities; the

9    location, duration, intensity and frequency of the pain or symptoms; factors that cause or

10   aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other

11   measures or treatment used for relief; functional restrictions; and other relevant factors.

12   Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.

13          As for Plaintiff's argument that the ALJ merely summarized the evidence, the Court finds

14   the argument not supported.   The ALJ began by laying out why he was discounting her claims—

15   they were "not entirely consistent with the medical evidence and other evidence in the record,"

16   pointing to "imaging studies, neuromuscular examinations, treatment records, and reported

17   activities/demonstrated functioning are not consistent with the degree of disabling severity

18   alleged"—and then went on to discuss the specific evidence supporting his assessment.   (AR 28-

19   30).   The Court concludes in agreement with Defendant that Plaintiff essentially requests the

20   Court to find the ALJ should have reached a different conclusion, but the record demonstrates

21   the ALJ accurately reviewed the evidence, some of which suggested greater functional

22   limitations and some of which suggested fewer functional limitations (AR 27-31).   As noted

23   above, it is not this Court's function to second guess the ALJ's conclusions and substitute the

24   Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational

25   interpretation, it is the ALJ's conclusion that must be upheld."   Ford, 950 F.3d at 1154 (quoting

26   Burch, 400 F.3d at 679).

27          Accordingly, the Court rejects the Plaintiff's challenges and finds no remandable error.

28   The Court finds the ALJ reasonably declined to find the record supported the full extent of

Plaintiff's subjective testimony, and provided clear and convincing reasons for doing so, supported by substantial evidence in the record.  The Court finds no error in the ALJ's omitting such allegations from the RFC.  See Smartt, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); Kaufmann, 32 F.4th at 851–52; Orn, 495 F.3d at 635; Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.

## V.

## CONCLUSION AND ORDER

Based on all of the foregoing reasons, the Court finds: (1) the ALJ's determination of Plaintiff's RFC was proper and supported by substantial evidence; and (2) the ALJ provided multiple clear and convincing reasons for rejecting Plaintiff's symptomology evidence and properly declined to include such work-related limitations in the RFC finding.  The Court finds the ALJ's decision to be proper, supported by substantial evidence, and free from remandable error.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Luz M. Robles De Nunez.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **April 7, 2023**

_____
UNITED STATES MAGISTRATE JUDGE